UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WALTER ENRIQUE GARCIA CRUZ,

              Petitioner,

v.                                              Civil No. 2:26cv234

RUSSELL HOTT, et al.,

              Respondents.

MEMORANDUM ORDER

    Before the Court is Walter Enrique Garcia Cruz's ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"), filed pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner, who has been in immigration custody since February 20, 2026, argues that because he has demonstrated that his removal from the United States is not "reasonably foreseeable," his continued detention violates due process.[1] ECF No. 1, at 6-7; ECF No. 17, at 2-10 (citing Zadvydas v. Davis, 533 U.S. 678, 688 (2001)). Petitioner separately argues that Immigration and Customs Enforcement ("ICE") violated its own regulations, and Petitioner's due process rights, when ICE erroneously revoked his supervised release and detained him without providing any justification for such action or an opportunity to challenge it. ECF No. 1, at 6-7; ECF No. 17, at 10-17.

---

[1] Although the Petition was filed pro se, counsel made an appearance on Petitioner's behalf in late March, ECF No. 11, was granted an extension of time to file a reply, ECF No. 15, and filed a detailed reply on Petitioner's behalf on April 10, 2026, ECF No. 17.

The Federal Respondents assert that Petitioner's first claim fails because (1) Petitioner has been re-detained to effectuate his removal for  only two months, far short of the "presumptively" reasonable six month detention period outlined in Zadvydas,[2] and (2) Petitioner "fails to demonstrate a good reason to believe that there is no significant likelihood of his removal," and even if he has made such preliminary showing, Respondents have rebutted it. ECF No. 7, at 8-11.  As to Petitioner's second claim, Respondents contend that ICE complied with applicable regulations when revoking Petitioner's supervised release in order to effectuate his removal.  Id. at 11.

For the reasons outlined below, the current record supports relief based on Petitioner's first argument.  However, because Petitioner submitted a factual supplement after Respondents filed their opposition, Respondents will be afforded an expedited opportunity to **SHOW CAUSE** why the Petition should not be granted.

### A. Background

Petitioner was admitted to the United States in 2016 as a lawful permanent resident. ECF No. 7-2, at 2.  In 2019, Petitioner was charged with and convicted of a felony involving the sexual battery of a victim under age 13.  Id. at 2-3.  According to Loudoun County Circuit Court records, Petitioner was sentenced to

---

[2] The "presumptively reasonable" period consists of the 90-day removal period that starts when a removal order becomes final followed by 90 additional days typically afforded to the government to effectuate removal.

2

ten years imprisonment, with 5 years suspended, following by 15 years of supervised probation. Loudoun Cnty. Cir. Ct. Case No. CR34548-00; Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Circ. 1989) ("[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.").

Upon his release from state custody in late 2023, Petitioner was taken into civil immigration custody and charged with being removable due to his felony conviction. ECF No. 7-2, at 3. Petitioner's removal case ended with a finding that he was "not removable as charged," but a second removal case brought shortly thereafter resulted in a finding that Petitioner was "removable as charged." Id. at 3-4. Notwithstanding such ruling, in September 2024, Petitioner was granted "deferral of removal" to his home country of El Salvador under the regulations implementing the Convention Against Torture. Id. at 4. The following month, the Department of Homeland Security ("DHS") began efforts to remove Petitioner to Costa Rica, Nicaragua, Guatemala, or Honduras. Id. In December 2024, a "90-day Post [Removal] Order Custody Review" was completed and Petitioner was "released from DHS custody on an Order of Supervision." Id. (emphasis added). On February 20, 2026, after completing more than a year of supervision,[3] Petitioner

---

[3] Respondents report that Petitioner was not in custody from December 10, 2024 until he was re-detained in February 20, 2026. ECF No. 7-2, at 4. Because Petitioner was previously sentenced to 15 years of supervised probation by the Loudoun Circuit Court, he was presumably being monitored by both state and federal authorities during his term of Supervision. Despite being among the

3

was detained during a "regularly scheduled ICE check-in." ECF No. 12, at 1. While Petitioner states that he was not provided with any papers or told where he was going until several days later, id., Respondents state that Petitioner was issued a "Notice of Revocation of Release" and was placed in "civil immigration custody pending a third country removal fear screening to Mexico," ECF No. 7-2, at 4. On February 26, 2026, an asylum officer determined that Petitioner could be removed to Mexico, but according to Respondents, "ICE's removal efforts have paused" due to this Court's March 13, 2026, Order preventing Petitioner from being removed from this District during the pendency of his habeas case. Id. at 6. Respondents further represent that "[a]bsent the underlying habeas petition, ICE would be able to transfer Petitioner to [a] Southwest Border facility and present Petitioner to Mexico for acceptance." Id.

According to the sworn recitation of the facts provided by Petitioner, Respondents' declaration omits a key series of events directly relevant to their efforts to remove Petitioner to Mexico. ECF No. 12. Petitioner explains that on February 27, 2026, the day after an interview with an asylum officer during which he voiced fears of being deported to Mexico, Petitioner was transferred to Louisiana and then to Texas. ECF No. 12, at 1.

---

public for over a year, the record is devoid of any suggestion that Petitioner violated any condition of his state or ICE supervision.

4

Petitioner was then placed on a bus for immediate removal to Mexico despite his efforts to contact his lawyer and challenge the finding that he lacked a credible fear of being sent to Mexico.  Id. Petitioner provided his A-number to an ICE officer and explained that he was not Mexican, but the officer said that it was his job to send Petitioner to Mexico.  Id.  On the evening of March 2, 2026, an ICE officer walked Petitioner and the others from the bus across a bridge to Mexico.  Id.  Petitioner told the Mexican immigration officer on the other side of the border that he was from El Salvador.  Id. at 2.  After being taken to a nearby office for a time, the Mexican officer walked Petitioner and two men from Guatemala back across the U.S. border while everyone from the bus who was Mexican stayed in Mexico.  Id.  U.S. officials took Petitioner back into custody, and a few days later, he was sent to Louisiana, then Ohio, then back to Virginia.  Id.  Though Petitioner's pending habeas Petition was filed in this Court in early March, it is dated February 24, 2026, and was mailed before Petitioner was transported to the border.  ECF No. 1-1.

### B. Discussion

It appears that Petitioner's 90-day statutory removal period began 18 months ago when his order of removal became administratively final.  ECF No. 17, at 3;[4] see Montoya Palacios

---

[4] Petitioner was lawfully held in custody for most if not all of the 90-day period, but at or near the end of that period, he was released on supervision. Nothing in the record suggests that Petitioner committed a single infraction or

v. Baker, No. CV GLR-25-4045, 2026 WL 171690, at *2 (D. Md. Jan. 22, 2026) ("Except when the noncitizen is detained in a case outside the immigration process or when a court orders a stay of removal, the removal period begins when the removal order becomes administratively final." (citing 8 U.S.C. § 1231(a)(1)(B))). DHS took active steps to remove Petitioner to several countries very soon after his removal order became final, but they immediately learned that one of those countries would not accept him. Respondents offer no update as to the status of the request to the other countries and in fact have not identified any other affirmative steps or progress toward removal during the last 18 months. Respondents' affiant does assert that removal to Mexico is immediately viable; however, Respondent has not presented any evidence, nor even made unsupported statements, suggesting that U.S. Officials have had any communication with Mexican immigration authorities in an effort to effectuate Petitioner's removal. Moreover, if Petitioner's sworn statement is credited, Mexico has already once rejected Petitioner during a removal effort that may have been attempted without diplomatic pre-clearance. If true, it is quite disturbing that such facts were omitted by Respondents' affiant.

---

engaged in any misconduct or failure to follow procedures during his term of supervision.

To the extent Respondents suggest that the six-month presumptively reasonable detention period to effectuate removal begins anew upon re-detention, the Court agrees with Petitioner that it does not. See Carcamo v. Field Off. Dir., U.S. Immigr. & Customs Enf't, No. CV 9:26-141-MGL, 2026 WL 658864, at *3 (D.S.C. Mar. 9, 2026) (disagreeing with the "handful of courts" that have "determined the six month[] [presumptively reasonable removal period] restarts upon re-detention," and joining the "clear majority" of courts finding that it does not); Montoya Palacios v. Baker, No. CV GLR-25-4045, 2026 WL 171690, at *3 (D. Md. Jan. 22, 2026) (recognizing that while "some courts" find that re-detention restarts the clock, "other courts broadly agree that the six-month period under Zadvydas does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" (cleaned up)). To rule otherwise would create undue opportunity for abuse of the period and undermine the due process interests it was meant to protect.

Second, even if the Court accepts Respondents' alternative claim that the presumptively reasonable period has not expired because the clock stops running upon release and begins running again upon re-detention,[5] Petitioner points to compelling case-specific reasons illustrating that he has carried his burden to

---

[5] Because Petitioner was detained in 2024 subject to a final order of removal for approximately three months, and has now been re-detained for more than two months, a "restarted" clock would mean that the presumptive period is not yet expired, but is now nearing its end.

overcome the presumption.  <u>Zavvar v. Scott</u>, No. CV 25-2104-TDC, 2025 WL 2592543, at *6 (D. Md. Sept. 8, 2025) (explaining that the six-month presumption is just that, and while the Government "has no burden to justify detention" during this period, the presumption "may be overcome by [petitioner's] proof that removal is not reasonably foreseeable" (quotation marks omitted)); <u>Serpas v. Simon</u>, No. 1:25cv2369, ECF No. 15, at 7 (E.D. Va. Feb. 2, 2026) (Trenga, J.) ("As other courts in this Circuit have recognized, the Supreme Court in <u>Zadvydas</u> did not announce a categorical bar on challenging detention prior to six months, but rather a rebuttable presumption that 180 days of detention is reasonable.").  This is so because the current record is devoid of any evidence suggesting that, during the <u>last eighteen months</u>, the Government has taken any steps (save reportedly walking Petitioner across the Mexican border) to effectuate his removal to a suitable third-country <u>willing to accept Petitioner</u>.  <u>See</u> <u>Abrego Garcia v. Noem</u>, No. 8:25-2780-PX, 2026 WL 439211, at *4 (D. Md. Feb. 17, 2026) (finding that the "years of Respondents' inaction in effectuating third-country removal cuts decidedly against any requested finding that [the petitioner's] removal is reasonably foreseeable," and that even if the six month "presumptive" constitutional removal period was still in effect, the petitioner carried his burden to overcome it).  Additionally, while the record reveals that Petitioner was re-detained for the purpose of removing

him to Mexico, Petitioner's evidence demonstrates that Mexico has rejected DHS's attempt to remove him there. See Constant v. Perry, 1:25cv1916, ECF No. 25, at 11 (explaining that there was evidence in the record that Mexico would not take the petitioner and that other courts, "when presented with similar evidence regarding nonconsensual [third-country] removal to Mexico have held that it supports Petitioner's argument that removal is not reasonably foreseeable"); Serpas, No. 1:25cv2369, at 8 (finding that the recent identification of Mexico as a possible country of removal several years after "withholding of removal as to El Salvador" had been granted was of little import because that process was "still in nascent stages with it being unclear whether Respondents have even obtained Mexico's affirmative assent to Petitioner's removal").

Third, the Court rejects Respondents' abbreviated contention that they have "rebutted" Petitioner's showing that removal is not reasonably foreseeable. Respondents contend that continued detention is warranted as long as any progress toward removal is being made, "however slow." ECF No. 7, at 10. But even accepting this statement of the law, Respondents have not demonstrated any "progress." Rather, they offer the conclusory assertion that progress will be made in the future if this Court lifts its removal order because Petitioner will be transported to the southern border so that ICE can "present him" to Mexico for acceptance. ECF No.

9

7, at 10; ECF No. 7-2, at 5.   But according to Petitioner's sworn statement, this very approach has already been unsuccessfully attempted.   On the current record, the bare promise to try this approach, unsupported by any reason to expect it to succeed, is woefully insufficient.

At this stage of the case, particularly if ICE has indeed unsuccessfully attempted to remove Petitioner to Mexico and such fact was later obfuscated by Respondents' affiant, the record decidedly favors Petitioner.[6]   However, because Petitioner submitted a factual declaration shortly <u>after</u> Respondents filed their opposition, and because Petitioner's arguments are more developed in his counseled reply brief, the Court will afford Respondents an expedited opportunity to **SHOW CAUSE, no later than April 29, 2026,** why the Petition should not be granted.[7]

---

[6] The Court notes its further concern that Petitioner claims a credible fear of being removed to Mexico (as it may lead to his re-removal to El Salvador), that he had a fear interview with an asylum officer but was not even told the result, and that his attempts to reopen that matter with the immigration court were ignored so that he could be hastily walked across the border to Mexico.   ECF No. 12, at 3; <u>cf.</u> <u>Serpas</u>, No. 1:25cv2369, at 15 (finding that, even absent a controlling regulation, the petitioner was "entitled as a matter of procedural [due] process to immigration judge review of his negative fear determination" regarding removal to a third-country).   The Court's concern is compounded by Respondents' affiant's failure to mention the categorically relevant walked-across-the-border removal attempt in his recitation of relevant facts.

[7] This Court finds it unnecessary to resolve Petitioner's second claim for relief: that he was denied due process when he was re-detained without valid notice, explanation, or opportunity to be heard.   The Court does, however, note the facially persuasive arguments made by Petitioner's counsel, including that (1) the manner in which the written "notice of revocation" was filled-out does not provide "notice" <u>why</u> release was revoked; (2) the notice was electronically signed on February 20, <u>2026</u>, yet the date of Petitioner's "informal interview" to "respond to the reasons for revocation" was listed as September 20, <u>2024</u>; and (3) the "proof of service" was also dated 2024 and does not include Petitioner's signature or any other notation suggesting that the written form was ever "served" on Petitioner.

10

Respondents are provided an abbreviated period in which to respond due to the fact that Respondents have already been afforded a fair opportunity to present the facts and arguments in support of their position.

Should Respondents fail to show cause, the Court anticipates entering an order granting the Petition and ordering that Petitioner be immediately released back onto the same terms of supervision that he was on for fourteen months before his re-detention by ICE in February of 2026.  In addition to any conditions imposed by ICE, it is the Court's understanding that if Petitioner is re-released, he will also be subject to supervised probation by a Virginia probation officer.

Consistent with Petitioner's claim that he sought a stay of removal to Mexico in order to reopen the credible fear determination, ECF No. 12, at 3, and given Respondents' recognition that Petitioner can reopen such proceedings and obtain review from an immigration judge, the Court also anticipates ordering that Petitioner not be removed to Mexico in the future unless he is first provided an opportunity for "an IJ to review his third country fear screening."  ECF No. 7, at 6.

Counsel for Petitioner may file a supplemental response, if so inclined, **no later than May 4, 2026.**

The Clerk is **REQUESTED** to forward a copy of this Memorandum Order to all counsel of record.

11

IT IS SO ORDERED.

_____ /s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 23 , 2026

12